889 F.2d 1086
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Helen ADAMS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-3014.
 United States Court of Appeals, Sixth Circuit.
 Nov. 20, 1989.
 
 Before KENNEDY and WELLFORD, Circuit Judges, and LIVELY, Senior Circuit Judge.
 LIVELY, Senior Circuit Judge.
 
 
 1
 This case involves recoupment by the Secretary of Health and Human Services from the widow of a covered wage earner of survivor's benefits paid to the wage earner's child. When the widow was determined to be entitled to disabled widow's benefits, the Secretary withheld from her check for back payments the amount of overpayment to her son. The widow appeals from a judgment upholding the Secretary's order of recoupment.
 
 I.
 
 2
 The Social Security Act provides that where an overpayment of benefits has been made, "there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of [the provisions of the Act for old-age, survivors, and disability benefits] or would be against equity and good conscience." 42 U.S.C. Sec. 404(b) (1982). The Secretary's regulations provide for waiver of an adjustment or recovery of overpayments where either of the statutory criteria has been met. 20 C.F.R. Sec. 404.506 (1988).
 
 A.
 
 3
 On April 9, 1986, the Social Security Administration (SSA) notified Helen Adams that she had been awarded widow's disability benefits of $325 per month, retroactive to February 1984. The letter advised that monthly payments would begin in May 1986 and that "[a]fter we decide how much your past due benefits should be, we will send you another notice and any benefits you are due." On July 21, 1986, the SSA informed Mrs. Adams that the determination of her benefits had been revised. The total disabled widow's benefit accrual through March 1986 was calculated at $8,120. The SSA advised that it would deduct from this payment the sum of $4,273.40, the amount overpaid to her son David Adams in 1980, 1981 and 1982. During those years David collected benefits as a child and student child, but his earnings were sufficient to disqualify him for benefits to the extent claimed as overpayment. David's payments were made to Helen Adams in 1980, but were made directly to David in 1981 and 1982.
 
 
 4
 Mrs. Adams applied for a waiver of recoupment with respect to 1981 and 1982, stating that David was "of age, receiving his own checks, [and] living in a separate household" during those years. On the "Refund Questionnaire," Mrs. Adams showed her total monthly income as $611 and her monthly expenses as $748, including support of another son, age 26. On the same form she listed her assets other than automobile and household furnishings as $100 cash on hand and a savings account balance of $3,900. She explained that she had to sell her mobile home to meet monthly bills and that the savings account consisted of the proceeds. On a similar questionnaire, filed September 11, 1986, David Adams stated that he had not lived at home after January 1981 and was unaware of the limit on his earnings or the need to report. He was out of work in September 1986 and again living with his mother.
 
 B.
 
 5
 The SSA denied Mrs. Adam's request for a waiver of recovery. The "Recovery Reviewer" determined that Helen Adams was without fault in causing David's 1981 and 1982 overpayments, but that recovery did not defeat the purpose of the Act. The reviewer explained that the overpayment had already been recovered "and it does not appear to have caused her undue hardship since it was withheld from a retroactive payment due her." Considering her assets and income, however, the reviewer concluded, "it looks as though recovery (if it were to be done now) would cause hardship." Following final denial of a waiver by a "Specialist," Mrs. Adams requested a hearing.
 
 
 6
 At the hearing Mrs. Adams testified that her savings account had a balance of $1,117.34 on July 11, 1987. She had received about $7,875 from sale of the trailer in June 1986. She had purchased an automobile for $1,700 and had loaned David $2,500, accounting for the $3,900 balance reported earlier on the recovery questionnaire. At the time of the hearing, Mrs. Adam's total income was $616 per month and her expenses were approximately $800. She owed two charge accounts totaling about $500. One of her sons (not David) was living with her and planning to move as soon as he could find a full-time job. Mrs. Adams testified that she tried to budget her money, but it never came out right; some unexpected thing always came up. She said she thought she was going to be able to make it when she loaned David $2,500, but her expenses kept climbing. She had car repairs and high utility bills, and had been unable to buy a denture or new glasses that she needed. She pointed out that she was "fighting with Social Security" for three years to get benefits and finally received only a portion of the amount she had been told she was entitled to. Since her monthly income did not match her necessary expenses, she drew from the savings account to make up the difference. Thus, she argued, the recoupment did create a financial hardship.
 
 
 7
 Mrs. Adams testified that she never received widow's benefits until she was found to be disabled. David's overpayment was deducted from her lump sum accrued disability benefits. The only connection between the overpayment to David and the recoupment from Helen was that benefit determination for both the widow and the son were based on the earnings record of John P. Adams.
 
 II.
 
 8
 The administrative law judge (ALJ) who conducted the hearing found that Mrs. Adams was without fault respecting the 1981 and 1982 overpayments to David, but concluded that waiver could not be granted. The ALJ emphasized that Mrs. Adams had made a loan or gift to David and was "well aware of her potential liability for the overpayment recovery." He also found that she continued to be able to meet ordinary and necessary living expenses, but acknowledged that her savings account was reduced from $3,900 to $1,117 in about one year. The Appeals Council affirmed the ALJ's decision, and Mrs. Adams sought review in the district court.
 
 
 9
 The parties consented to trial before a magistrate, who reviewed the administrative record and heard oral arguments. The magistrate found that "[s]ubstantial evidence clearly supports the determination that recovery of the overpayment ($2,859.40) did not create a financial hardship." Her accrued payment was actually reduced by $4,273.40, but only $2,859.40 was attributed to overpayments to David in 1981 and 1982. She did not contest the finding that she was at fault with respect to the 1980 overpayment.
 
 
 10
 In reaching his conclusion, the magistrate stated: "In June, 1986, after she received the back benefits check from which the overpayments had been withheld, Plaintiff sold her mobile home and received net proceeds of $7,875. Knowing that she had just received $4,273.40 less from the Social Security Administration because of overpayments to David, she nonetheless 'loaned' him $2,500 of the proceeds from the trailer sale, with no necessary expectation of repayment." (Emphasis added). This statement is simply not accurate. The SSA first advised Mrs. Adams that her accrued benefits of $8,120 would be reduced for overpayments to David on July 21, 1986. Thus, in June when she loaned David part of the proceeds from sale of the trailer she still expected to receive the entire amount of accrued benefits.
 
 
 11
 The magistrate also found that the recovery was not against equity and good conscience. In doing so, he relied on 20 C.F.R. Sec. 404.509 which defines "against equity and good conscience" to mean that a person "because of a notice that [an incorrect] payment would be made or by reason of the incorrect payment, relinquished a valuable right ... or changed his or her position for the worse." The magistrate found neither of these tests satisfied because "Ms. Adams continued to support one adult son ... and gave $2,500 to another adult son out of her meager savings after she was notified that the overpayments would be recovered." (Emphasis in original).
 
 III.
 
 12
 This appeal was submitted on the record and briefs of the parties, oral argument having been waived. Upon consideration, we conclude that the Appeals Council and the district court erred in their conclusion that recovery from Helen Adams of the overpayment to David Adams would not defeat the purpose of the Act and would not be against equity and good conscience.
 
 
 13
 The finding that the deduction of these payments did not create financial hardship for Mrs. Adams is not supported by substantial evidence. She was diagnosed as having multiple sclerosis in 1983 and applied for disabled widow's benefits. In April 1986 after three years of "fighting with the Social Security" she was awarded a disability payment of $325 per month and notified that she would receive accrued benefits from February 1984 through March 1986. She testified without contradiction that she sold her mobile home in June 1986 because she needed money for living expenses. On July 21, 1986, she first learned that the accrued benefits, which she still had not received, would be reduced by the amount of overpayments to a son who was not living in her home at the time the overpayments were made. Mrs. Adams stated that David lived elsewhere during that period, and that she had no knowledge of his earnings. There was no evidence to the contrary.
 
 
 14
 The evidence is also uncontradicted that Mrs. Adams's income never equalled her living expenses. She made up the shortfall for ordinary expenses and paid for unexpected items by regularly withdrawing from her savings account. Furthermore, when she made the loan to David from proceeds of the trailer sale she knew she would receive accrued disability payments for more than two years and had not been notified that more than one-half of the amount to which she was entitled would be deducted because of overpayments to David in earlier years. Thus, the purpose of the Act--to provide a beneficiary's necessary living expenses--would be defeated by permitting recoupment under the facts of this case.
 
 
 15
 We also disagree with the determination that recoupment of the overpayment would not be against equity and good conscience. The payment from which the money was deducted did not represent her share of a package of survivors' benefits, part of which was payable to Mrs. Adams and part to her children. She did not participate in the original award of benefits, presumably because she was divorced from J.P. Adams at the time of his death, and was not receiving widow's benefits in 1981 and 1982 when David was overpaid. She was only awarded benefits as the divorced wife of a deceased wage earner when she was found to be disabled, and the deduction was from the lump sum payment for accrued disability benefits. Since Mrs. Adams was without fault with respect to the overpayments and was completely unaware that they had been made it was against equity and good conscience to recoup the overpayment to David from these benefits.
 
 
 16
 We agree with the holding in Groseclose v. Bowen, 809 F.2d 502 (8th Cir.1987), that the Secretary's interpretation of "against equity and good conscience," adopted by the magistrate in the present case, is unreasonably narrow. The Act does not define "equity and good conscience," so we look to the common understanding of the phrase. Since the regulation limiting the meaning of the words has no foundation in the statute, or the legislative history, we are not bound by the Secretary's interpretation. The legislative history indicates a congressional intent to apply general equity principles to a claim for relief from recoupment. The Groseclose court summarized that history:
 
 
 17
 Although the legislative history does not reveal the meaning of the phrase, it does indicate that Congress intended to make recovery more equitable by authorizing the Secretary to waive recovery in certain circumstances. H.R.Rep. No. 728, 76th Cong., 1st Sess. 19 (1939) ("Provision is made for making more equitable the recovery by the Federal Government of incorrect payments to individuals."); Hearings on Social Security before the House Committee of Ways and Means, 76th Cong., 1st Sess. 2287-88 (1939) (expressing concern over allowing recovery from persons who are "perfectly innocent of any wrong doing"); S.Rep. No. 744, 90th Cong., 1st Sess. 257 (1967), U.S.Code Cong. & Admin.News 1967, pp. 2834, 3906 ("The new subsection (b) of section 204 of the act broadens the Secretary's authority to waive adjustment of recovery of overpayments.").
 
 
 18
 Id. at 505-06.
 
 
 19
 In short, we agree with the conclusion in Groseclose that "the Secretary's definition of 'against equity and good conscience' is unreasonably narrow," and that recoupment in this case would be contrary to the legislative intent--"that recoupment should be equitable." Id. at 506.
 
 
 20
 The judgment of the district court is reversed. The Secretary is directed to reimburse the benefits that were withheld from Mrs. Adams as a result of recoupment of overpayments made to David Adams in 1981 and 1982.
 
 
 21
 KENNEDY, Circuit Judge, concurring.
 
 
 22
 Section 204(a) of the Social Security Act provides that where a beneficiary is overpaid, recovery must be had for the benefits payable to other persons entitled to benefits on the same record of earnings unless relief is granted under section 204(h). Where, as here, the individual is without fault, no recovery or adjustment is made if such recovery or adjustment would defeat the purpose of the act or would be against equity or good conscience.
 
 
 23
 The Secretary's regulations in effect when the decision appealed from was made set out his interpretation of the statutory terms. Recoupment would defeat the purpose of the subchapter if it would "deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. Sec. 404.508(a) (1986). Recoupment would be against equity and good conscience if an individual in reliance on the payments "relinquished a valuable right ... or changed his or her position for the worse." Id. Sec. 404.509. In reaching such a determination, the individual's financial circumstances are irrelevant.
 
 
 24
 An agency's interpretation of the statute it is required to administer is entitled to great deference. " '[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.' " Young v. Community Nutrition Institute, 476 U.S. 974, 980 (1986) (quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44 (1984)).
 
 
 25
 Applying the standard of the regulations, the ALJ found that the waiver could not be granted for the overpayment to David in 1981 and 1982. The amount of the overpayment was deducted from Mrs. Adams' past due benefits; her present monthly payments are not reduced. The ALJ found that she is able to meet ordinary and necessary living expenses from her income, although her bank account has been diminished. Mrs. Adams had sufficient funds to provide her son David with $2,500. Her expenses included food for her grown son, Mark, who had been living with her for at least a year while unemployed. When asked why he was unable to find employment, Mrs. Adams said it was because he was lazy.
 
 
 26
 The ALJ's finding that claimant had not shown that recovery of the overpayment from the lump sum past due benefits would deprive her of income or financial resources sufficient to ordinary and necessary needs is supported by substantial evidence. She had sufficient funds to provide one son with $2,500 and the other with food and a place to live. She did not show that she had relinquished any right or changed her position for the worse. Thus under the interpretation of equity and good conscience in the then applicable regulations, the ALJ did not err in finding that overpayments could not be waived.
 
 
 27
 I cannot agree with the Eighth Circuit's decision in Groseclose v. Bowen, 809 F.2d 502 (8th Cir.1987) that the Secretary's interpretation did not reflect the common, ordinary meaning of the phrase "against equity and good conscience." As that court recognized, the language is very general. Examined closely the Eighth Circuit is really holding that if the applicant was without fault, it is inequitable for the Secretary to refuse to waive recovery. However, since the requirement that the applicant be without fault is a threshold requirement, it cannot be an automatic ground for waiver.
 
 
 28
 I concur, however, in the remand to require reimbursement of withheld benefits. Under the revised regulation, 53 Fed.Reg. 25,481 (1988) (to be codified at 20 C.F.R. Sec. 404.509), recovery of an incorrect payment is considered against equity and good conscience if an innocent beneficiary was living in a separate household from the overpaid beneficiary and derived no benefits from the overpayment. Mrs. Adams derived no benefit from David's overpayment. Both she and David testified he was not living at home when he received the overpayment. Thus, under the revised regulation, she was entitled to a waiver. When, as here, the regulation has been modified in a manner to benefit a claimant while the matter is on direct appeal, the new regulation should be applied retroactively. LeMaster v. Secretary of Health & Human Services, 802 F.2d 839, 841 (6th Cir.1986). See also Baker v. Richardson, 462 F.2d 81 (5th Cir.1972).