NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0076n.06
Case No. 19-3453

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MELISSA COHAN, | ) | **FILED** |
|  | ) | Feb 03, 2020 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
|  | ) |  |
| COMMISSIONER OF SOCIAL SECURITY, | ) |  |
|  | ) |  |
| Defendant-Appellee. | ) |  |
|  | ) |  |

BEFORE: SUHRHEINRICH, DONALD, and MURPHY, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** In January 2006, following the death of her husband, Plaintiff-Appellant Melissa Cohan ("Cohan") applied for and was awarded mother's insurance benefits under Title II of the Social Security Act ("the Act"). At the time she submitted her application for mother's benefits, Cohan was not employed. After receiving monthly benefits for one year, Cohan sought employment and began earning an income that exceeded the yearly earnings limit on her benefits, resulting in an overpayment. Cohan requested a waiver of the overpayment recovery, which the Defendant-Appellee Commissioner of Social Security ("Commissioner") denied. Pursuant to 42 U.S.C. § 405(g), Cohan sought judicial review of that decision in the district court, which affirmed the Commissioner's decision to seek recovery of the overpayment. Cohan now appeals, asserting primarily that recovery of the overpayment defeats

the purpose of the Act and goes against equity and good conscience, thereby entitling her to a waiver of the overpayment under 42 U.S.C. § 404(b)(1). We **AFFIRM**.

I.

Under the Act, mother's and father's benefits are available to the surviving spouse of a decedent who was fully or currently insured at the time of their death if the surviving spouse, among other requirements, has a child of the decedent in their care under the age of sixteen. 20 C.F.R. § 404.339. This monthly benefit is subject to an annual earnings limit, meaning the amount of benefits a claimant receives each month may be reduced if the claimant's income surpasses the applicable earnings limit for the year in which the benefits are received. *Id.* § 404.342 (incorporating by reference *id.* §§ 404.304, 404.415); *see also* 42 U.S.C. § 403(a)-(b).

On January 24, 2006, Cohan submitted an application to the Social Security Administration ("SSA") for mother's insurance benefits pursuant to the Act. Cohan's application for mother's benefits included the following provisions:

> I understand that SSA will use the earnings reported to SSA by my employer(s) and my self-employment tax return (if applicable) as the report of earnings required by law, to adjust benefits under the earnings test. I also understand that it is my responsibility to ensure that the information I give SSA concerning my earnings is correct. I also understand that I must furnish additional information as needed when my benefit adjustment is not correct based on the earnings on my record.
>
> . . . .
>
> My reporting responsibilities have been explained to me.

Admin. R. 489. On January 29, 2006, the SSA issued an award notice to Cohan informing her that she was entitled to receive $1,382.00 in monthly mother's benefits. Additionally, the award notice stated:

> **Work and Earnings Affect Payments**
>
> The monthly earnings test applies only to 1 year. That year is the first year a beneficiary has a non-work month after entitlement to Social Security benefits. Our records show that you had or will have at least one non-work month in 2006. If you

> ever go to work, we will pay benefits for each year based on your work and earnings for that year.
>
> . . . .
>
> **Your Responsibilities**
>
> Your benefits are based on the information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away.
>
> We have enclosed a pamphlet . . . [that] tells you what must be reported and how to report. Please be sure to read that part of the pamphlet which explains how work could change payments.

Admin. R. 494-95. In 2006, Cohan received $15,202.00 in mother's benefits payments.

Cohan was not employed when she applied for and was awarded benefits in January 2006. In February 2007, however, Cohan began working for the City of Worthington and earning an annual income of $31,778.00. Cohan asserts that she reported her employment status change during an in-person visit to her local SSA office. During this visit, Cohan claims that she completed a tax withholding form and was informed that she did not need to complete any additional paperwork to report her income change.

A.     **2007 Overpayment**

On July 15, 2008, Cohan received a letter from the SSA informing her that, due to her 2007 earnings, she had received an overpayment of benefits. The letter notified Cohan that the SSA had overpaid her $9,405.00 in 2007. The letter also explained that, to recover the money Cohan owed the SSA, the agency planned to begin withholding Cohan's benefits payments in September 2008, and that Cohan would begin receiving benefits again in April 2009. Additionally, the letter

detailed how the overpayment was calculated,[1] instructed Cohan to report any changes in her income or employment status to the SSA, and informed Cohan that she could appeal the SSA's overpayment decision or seek a waiver of the overpayment recovery.

In a letter dated September 2, 2008, the SSA reminded Cohan that, due to the overpayment she received in 2007, she would not receive benefits payments for September 2008 through February 2009, that she would receive a partial payment of her March 2009 benefits, and that her full monthly benefits payments would resume beginning with her April 2009 benefits payment. Cohan did not appeal the overpayment decision or seek a waiver of the overpayment recovery for the 2007 overpayment. Accordingly, Cohan did not receive any benefits payments for the months of September 2008 through February 2009.

## B. 2008 Overpayment

On August 20, 2009, the SSA sent Cohan another letter explaining that, because Cohan had earned more than the earnings limit for 2008,[2] Cohan owed the agency $13,193.00 in overpaid benefits for 2008. Further, the letter explained that the SSA would begin withholding Cohan's benefit payments beginning in October 2009 to recover the 2008 overpayment and that Cohan would begin receiving benefits payments again in July 2010. Again, the agency reminded Cohan

---

[1] Specifically, the letter stated:

> The earnings limit for 2007 is $12,960.00. If you work and earn over the allowed amount for the year, we withhold $1 in benefits for every $2 you earn above the limit. We have enclosed a worksheet to show how we applied the earnings limit to your earnings to figure your benefits.

Admin. R. 45.

[2] As noted in the SSA's letter, the earnings limit for 2008 was $13,560.00 and Cohan's employer reported that Cohan had earned $39,946.00.

of her obligation to report any changes in her income or employment status, her right to appeal its overpayment determination, and her right to seek a waiver of the overpayment recovery.

## C.    2009 Overpayment

On August 26, 2009, the SSA sent Cohan another letter stating that, assuming Cohan's 2009 income would be the same as her reported income of $39,946.00 in 2008, Cohan's earnings would exceed the earnings limit for 2009, which was $14,160.00. Based on this information, the SSA had determined that Cohan had received $11,011.00 in excess benefits between January and August 2009. Additionally, the letter explained that the SSA would cease Cohan's monthly payments until it had recovered "the money [the SSA] incorrectly paid [Cohan]" in 2009 and then continue to withhold Cohan's benefits payments to "collect the money [the SSA] overpaid [Cohan]." Admin. R. 329. The letter further emphasized that this calculated amount was based on Cohan's expected earnings for 2009, and that the SSA would use Cohan's actual reported earnings at the end of the year to make its final determination as to how much Cohan was overpaid or what benefits were due to Cohan that she did not receive but was entitled to receive in 2009.

## D.    Cohan Seeks Waiver of the Overpayment Recovery

Cohan did not appeal the SSA's determination that she received an overpayment in 2007, nor did she seek a waiver of that overpayment. She did, however, file a timely request for reconsideration appealing the SSA's decisions determining that she received overpayments in 2008 and 2009 and requesting a waiver from the SSA's recovery of those overpayments. Cohan's claims were denied initially and again upon reconsideration. Cohan then requested a hearing, which was held before Administrative Law Judge K. Michael Foley ("ALJ Foley") on May 9, 2011. On July 18, 2011, ALJ Foley issued an unfavorable decision, finding that Cohan was overpaid $24,204.00 in benefits between 2007 and 2009 due to her reported earnings during those

periods. Further, ALJ Foley declined to waive recovery of the overpayment, finding that Cohan was not "without fault" due to the "untruthful" and "inconsistent" statements Cohan made during the hearing. Admin. R. 19.

The Appeals Council denied Cohan's request for review of ALJ Foley's decision, and Cohan sought relief in federal court under 42 U.S.C. § 405(g). In response, the Commissioner moved for a voluntary remand to allow for additional development of essential factual issues that remained unresolved and for reconsideration of Cohan's case under the proper standard of review, which the district court granted. On March 11, 2015, the Appeals Council issued a remand order vacating ALJ Foley's decision and specifying the appropriate standard of review to be used in the new hearing as follows:

> Upon remand, the Administrative Law Judge will evaluate the record to assess whether the evidence shows that the claimant reported her work activities and earnings to the field office during the overpayment period and, if not, whether her failure to report or accept an erroneous payment was due to one of the specific circumstances articulated under 20 CFR 404 .510.

Admin. R. 459.

ALJ Paul Yerian ("the ALJ") held a hearing on July 25, 2016, at which Cohan appeared and testified. On May 3, 2017, the ALJ issued an unfavorable decision, finding that Cohan was overpaid benefits in the amount of $24,204.00 and that waiver was not appropriate. Cohan appealed the ALJ's decision to the Appeals Council, which denied her request for review on November 14, 2017. Accordingly, the ALJ's decision became the Commissioner's final decision.

Cohan sought review of the ALJ's decision in the United States District Court for the Southern District of Ohio. The magistrate judge issued a report and recommendation recommending that that the district court enter judgment in favor of the Commissioner, finding that the ALJ's decision was supported by substantial evidence. Despite Cohan's objections to the

magistrate judge's recommendation, the district court adopted the report and recommendation, affirmed the Commissioner's decision, and dismissed Cohan's case. Cohan filed a timely appeal.

II.

## A. Standard of Review

We review de novo an appeal from a district court's order concerning social security benefits, however, our review is limited to determining whether the ALJ's underlying findings are supported by substantial evidence. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005). An ALJ's decision is supported by substantial evidence where a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). We "will not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Stankoski v. Astrue*, 532 F. App'x 614, 618 (6th Cir. 2013) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)). Accordingly, we may affirm even if the record could support an opposing conclusion. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016).

## B. Statutory Framework

Under the Act, when a claimant receives an overpayment of social security benefits, "proper adjustment or recovery shall be made." 42 U.S.C. § 404(a)(1). An overpayment occurs when the amount of benefits paid to a claimant exceeds the amount of benefits the claimant was entitled to receive under the Act. 20 C.F.R. § 404.501(a). The amount of the overpayment is the difference between the amount paid to the claimant and the amount the claimant was entitled to receive. 20 C.F.R. § 404.504.

There are two types of overpayments: an "entitlement overpayment" and a "deduction overpayment." An entitlement overpayment occurs when an individual receives a benefit payment under the Act even though the "individual [] fails to meet one or more requirements for entitlement to such payment" or the benefit payment amount is greater than the amount the individual is entitled to receive. 20 C.F.R. § 404.510a. A deduction overpayment occurs when the amount of benefits a claimant is entitled to decreases—due to a change in the claimant's employment status, for example—but the claimant still receives the full amount of benefits. *Id.* § 404.415(c); *see also id.* § 404.423.

If an overpayment has been made, "there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). A claimant is considered "without fault" unless the overpayment resulted from:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. If it is determined that a claimant is "without fault" for an overpayment, the ALJ must then determine whether "adjustment or recovery would defeat the purpose of [the Act] or would be against equity and good conscience." 42 U.S.C. § 404(b)(1).

If a claimant is deemed at fault, she is not entitled to waiver of the overpayment and the Act mandates that the SSA seek recovery of the overpaid benefits and cease benefit payments to the claimant until the claimant has either refunded the overpayment or the amount of the overpayment has been withheld from the claimant's benefits. 42 U.S.C. § 404(a)(1); 20 C.F.R. § 404.502(a).

**C.      Recovery of the Overpayment of Benefits Incurred Prior to July 2008**

The ALJ determined that Cohan was not at fault in causing or accepting the overpayment made prior to July 2008.  The ALJ further concluded, however, that recovery of the overpayment does not defeat the purpose of the Act and is not against equity or good conscience, rending waiver of the overpayment made prior to July 2008 inappropriate.  We find that substantial evidence in the administrative record supports the ALJ's determination and accordingly affirm.

1.      *Whether Recovery of the Overpayment Defeats the Purpose of the Act*

Cohan contends that the ALJ ignored substantial evidence that supports a finding that recovery of any overpayments made prior to July 2008 would defeat the purpose of the Act, thus entitling her to a waiver of the overpayments under 42 U.S.C. § 404(b).  An adjustment or recovery defeats the purpose of the Act if it would "deprive a person of income required for ordinary and necessary living expenses."  20 C.F.R. § 404.508(a).  Further, an "[a]djustment or recovery will defeat the purposes of [the Act] in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." *Id.* § 404.508(b).  Upon review of Cohan's current income and ordinary and necessary living expenses, the ALJ found that Cohan has an income sufficient to cover more than her ordinary and necessary needs.  Accordingly, the ALJ concluded that recovery of the overpayment incurred prior to July 2008 does not defeat the purpose of the Act.

Cohan first asserts that the ALJ improperly excluded evidence regarding her legal fees under 42 U.S.C. § 406(a) and 20 C.F.R. § 404.508(a)(4).[3] The Commissioner argues that the ALJ properly determined that, because there was no evidence in the record that the SSA had approved the fee agreement between Cohan and her counsel, the legal debt she claimed is not presently a valid debt. We agree with the Commissioner.

Under the Act, an attorney must obtain the SSA's authorization prior to charging or collecting legal fees in connection with a proceeding before the SSA. 42 U.S.C. § 406(a). The Act states that "[t]he Commissioner of Social Security may, by rule and regulation, prescribe the maximum fees which may be charged for services performed in connection with any claim before the Commissioner of Social Security under this subchapter, and any agreement in violation of such rules and regulations shall be void." *Id.* § 406(a)(1); *see also Culbertson v. Berryhill*, 139 S. Ct. 517, 520 (2019) (noting that *id.* § 406 regulates the fees attorneys may charge under Title II of the Social Security Act). As there is no evidence that the SSA has approved the legal fees Cohan claims she owes, Cohan is not presently obligated to repay any legal fees in connection with her proceedings before the SSA. Thus, the ALJ properly declined to consider the alleged legal fees in his calculation of whether the overpayment recovery would defeat the purpose of the Act.

Additionally, Cohan argues that the ALJ failed to consider substantial evidence regarding her financial position at the time of her first hearing. When conducting a "defeat the purpose" assessment, the ALJ must evaluate the claimant's "current" income with financial information that

---

[3] Cohan additionally argues that district court's conclusion that consideration of her legal fees was improper when calculating her "ordinary and necessary expenses" pursuant to 20 C.F.R. § 404.508(a)(4) "denies [Cohan's] right to legal representation, due process, and is an abuse of discretion." Appellant's Br. 43. Any arguments Cohan raises asking us to directly review the district court's decision, rather than that of the ALJ, are erroneous. *Perry v. Comm'r of Soc. Sec.*, 734 F. App'x 335, 339 (6th Cir. 2018). Accordingly, we decline to address this argument.

is "no more than 1 year old when the waiver decision is made." Dept. of Health and Human Services, Program Operations Manual System, GN 02250.115(A)(1) (1998). This procedural requirement is also reflected in the Appeals Council's order vacating ALJ Foley's decision and remanding the matter for reconsideration. In its order, the Appeals Council specified that "[i]f the [ALJ] ultimately concludes that the claimant was without fault" the ALJ's analysis requires the "solicit[ation of] updated financial information from the claimant along with corroborative evidence to confirm the alleged income, assets, and expense amounts" to determine whether the "repayment of the overpayment would deprive her of income required for her necessary and ordinary living expenses." Admin. R. 459. Therefore, the ALJ appropriately considered only the financial records reflecting Cohan's current financial state.

2.    *Whether Recovery of the Overpayment is Against Equity and Good Conscience*

Cohan next argues that she is entitled to a waiver of recovery of the overpayments predating July 2008 pursuant to 42 U.S.C. § 404(b)(1) as it is against equity and good conscience because Cohan changed her financial position based on the SSA's notices that her benefits would recommence, citing 20 C.F.R. § 404.509 as support for her position. Recovery of an overpayment is against equity and good conscience if the claimant "[c]hanged his or her position for the worse . . . or relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself." *Id.* § 404.509(a)(1). Additionally, recovery of an overpayment is against equity and good conscience if a claimant demonstrates that she accepted the overpayment based on her reliance on "erroneous information from an official source within the [SSA] . . . with respect to the interpretation of a pertinent provision of the Social Security Act." *Id.* § 404.510(b). "In reaching such a determination, the individual's financial circumstances are

irrelevant." *Adams v. Sec'y of Health & Human Servs.*, No. 89-3014, 1989 WL 139565, at *4 (6th Cir. 1989) (Kennedy, J., concurring); *see also* 20 C.F.R. § 404.509(b).

The ALJ determined that recovery of the overpayment made to Cohan prior to July 2008 was not against equity and good conscience. Specifically, the ALJ concluded that Cohan failed to present evidence establishing that she incurred a financial obligation that changed her position for the worse or that she relinquished a valuable right, privilege, claim, or entitlement in reliance upon receipt of the benefit payment.

Cohan argues that she changed her financial position due to a reasonable reliance on the SSA's notices that her benefits would recommence, pointing to evidence that she used her benefits to pay for fees associated with her son's extracurricular activities. Cohan insists that her receipts evidencing her purchase of equipment associated with her son's extracurricular activities are equivalent to a financial obligation created in a purchase agreement. For support, Cohan points to the following example provided in the SSA regulation:

> A widow, having been awarded benefits for herself and daughter, entered her daughter in private school because the monthly benefits made this possible. After the widow and her daughter received payments for almost a year, the deceased worker was found to be not insured and all payments to the widow and child were incorrect. The widow has no other funds with which to pay the daughter's private school expenses. Having entered the daughter in private school and thus incurred a financial obligation toward which the benefits had been applied, she was in a worse position financially than if she and her daughter had never been entitled to benefits. In this situation, the recovery of the payments would be against equity and good conscience.

20 C.F.R. § 404.509, Example 1.

In the example, the widow "entered her daughter in private school because the monthly benefits made this possible" and "has no other funds with which to pay the daughter's private school expenses." *Id.* Thus, the widow entered into a financial obligation she otherwise could not have entered into but for the award of benefits. Conversely, at the second hearing Cohan testified

that she paid for her son's sports activities because she wanted to enable her son to "maintain his athletic stance" and that her son "was in multiple sports," which indicates that she had paid for these activities while receiving benefits in 2006 without receiving the additional monthly income Cohan began receiving via her employment. Admin. R. 894. Additionally, the "receipts" Cohan points to as evidence of this obligation are from 2015, indicating she was able to—and chose to—continue making payments related to her son's extracurricular activities after her benefit payments ceased.

Further, the widow's overpayment is an entitlement overpayment, as the SSA determined she was not entitled to receive *any* benefits. Here, however, Cohan's overpayment is a deduction overpayment, and the amount of benefits she was entitled to receive was reduced due to the income she earned. This income provided Cohan with additional funds that exceeded the amount of the overpayment she incurred.[4] Thus, unlike the widow in the example, whose overpayment resulted in a loss of all the funds she relied upon to pay for the tuition, Cohan received additional income between 2007 and 2008 that exceeded the overpayment amount that could be allotted to cover the payments she made in support of her son's sports activities. Accordingly, we find that substantial evidence supports the ALJ's conclusion that Cohan did not "incur a financial obligation . . . changing her position for the worse" that would make recovery of the overpayment inequitable. Admin. R. 287.

**D.** **Recovery of the Overpayment of Benefits Incurred After July 2008**

The ALJ found Cohan at fault for causing or accepting the overpayments incurred after July 2008. Cohan opposes this determination, arguing that, under 20 C.F.R. § 404.510(g), she is

---

[4] Cohan had access to more funds in 2007 than she did in 2006, as the SSA only withheld "$1 in benefits for every $2 [Cohan] earn[ed] above the [earnings] limit." Admin. R. 45.

entitled to a finding of "without fault" regarding the overpayments incurred after her receipt of the July 15, 2008 letter because she believed in good faith that she was entitled to the SSA benefits she received once the hold on her benefits ceased. Specifically, Cohan contends that a reasonable person would believe they were entitled to use the benefits received after an assessed overpayment was repaid via the withholding of benefits and benefit payments then recommenced.

The ALJ found that Cohan's receipt of the July 15, 2008 letter, which explained that her benefits were subject to a general yearly earnings limit and specified the limit imposed in 2007, put her on notice that that her employment status could cause an overpayment. In light of the SSA's notice that her benefits were subject to a yearly earnings limit, we find that Cohan did not have a good-faith basis to believe that, given her continued employment and increasing salary, she was somehow again entitled to the same amount of benefits she received during the year she was unemployed. Despite her continued receipt of benefit checks in the same amount as those she received prior to the July 2008 letter and failure to return them, Cohan argues that she is without fault because the SSA did not send her a formal request for her earnings information and she was in contact with her local SSA office. This evidence, which the ALJ considered in making his decision, does not negate the ALJ's finding that Cohan was at fault for the overpayment incurred after July 2008. Because Cohan's situation involves a deduction payment, she was required to exercise a high degree of care in determining whether the benefits she received were correct in light of her work activity. *See* 20 C.F.R. §§ 404.423, 404.511(a). Accordingly, we find that Cohan's failure to return the benefits checks in light of the information she possessed regarding her income and the yearly earnings limit supports the ALJ's finding that Cohan failed to exercise a high degree of care, thus rendering her at fault for the overpayment under 20 C.F.R. § 404.511.

Additionally, Cohan argues that the SSA's destruction of some of Cohan's records during a computer upgrade, failure to respond to her alleged Freedom of Information Act request, decision to withhold her son's benefits, and inability to provide her with an accurate representation of the overpayment owed render Cohan without fault for the overpayment. Each of these arguments attempts to shift blame to the SSA for the overpayments Cohan incurred. The "fault" determination at issue, however, only applies to the individual claimant. 20 C.F.R. § 404.507. "Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault." *Id.* Moreover, as none of these arguments were raised before the district court and were instead raised for the first time on appeal, we decline to address them further. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010).

Because we find that substantial evidence supports the ALJ's finding that Cohan was at fault for the overpayments incurred after July 2008, we need not address her contention that recovery of those overpayments would defeat the purpose of the Act or be against equity and good conscience. Further, as Cohan did not challenge the overpayment amount during the proceedings before the district court, we need not address any arguments she raises as to that issue on appeal. *Id.*

### E.     Due Process Violation

Finally, Cohan argues that the SSA violated her Fifth Amendment right to procedural due process because the "SSA never provided her notice and opportunity to be heard or respond before notifying her that she had an overpayment." Appellant's Br. 61. Cohan goes on to assert that the SSA violated her due process rights when it concluded that she incurred multiple overpayments of

her mother's benefits without providing her with adequate notice of the applicable yearly earnings limitations or accurate calculations of each assessed overpayment.

Cohan's due process claim is without merit.  From the day she submitted her application she was on notice that she had an ongoing, affirmative duty to report her earnings to the SSA. Further, as the district court opined, the SSA notified Cohan each time it assessed that she had received an overpayment; explained how the overpayment was calculated, which included specific information regarding the applicable yearly earnings limit and how much income Cohan's employer reported she had earned to the SSA; and informed Cohan of her right to appeal the overpayment assessment or seek a waiver of the overpayment recovery.  *Cohan v. Berryhill*, No. 2:18-CV-24, 2019 WL 1649322, at \*9 (S.D. Ohio Apr. 17, 2019).  Moreover, each overpayment notice explained that if Cohan appealed the overpayment assessment or requested a waiver within thirty days of receiving the notice she would not be required to repay the overpayment until the SSA rendered a decision regarding her case and her benefits would not be withheld during the determination period.  Thus, the SSA provided Cohan with ample time to respond to the notice before withholding or terminating her benefits.

### III.

For the foregoing reasons, we conclude that the ALJ's decision to deny Cohan's request for waiver of overpayment recovery is supported by substantial evidence and thus **AFFIRM** the judgment of the district court.